## JAMES D. RUSSELL & another *vs.* EASTERN RAILROAD COMPANY.

A corporation which owned a quantity of land which had been laid out into rows of building lots entered into a written agreement to convey to A. and B. the greater portion thereof, provided A. and B. should pay in cash a stipulated price therefor by the first day of January then next, or, if they should in the mean time have erected upon the lots such a number of buildings as to render a mortgage satisfactory to the corporation, should pay the same by a note payable in five years and secured by mortgage; and before making a sale of either of the lots reserved in one row, to offer the same for six days to A. and B on the same terms with the other lots; and to offer to A. and B. the reserved lots in the other rows on the same terms and in the same manner, in case the same should not be used for a hotel. Several years afterwards the corporation made a conveyance of the reserved lots in the first row, without first offering the same to A. and B. *Held*, that such conveyance was no breach of the above agreement.

CONTRACT brought to recover damages for a breach of the agreement recited in the preceding case, by failing to offer to the plaintiffs the lots twenty-eight, twenty-nine and thirty before making sale of them.

At the trial in this court, before *Hoar*, J., the plaintiffs read the contract, dated July 10, 1843, and a deed from the defendants to them, dated December 30, 1843, of the lots numbered one to nine, inclusive, and twelve to twenty-seven, inclusive, upon the plan; and introduced evidence tending to prove that on the 29th of November 1852 the defendants made a lease of the three lots in question to the East Boston Ferry Boat Company, for nine hundred and ninety-nine years, without first offering them to the plaintiffs, and that on the 8th of July 1857 the defendants conveyed all their estate in the premises to Charles Heath. The defendants requested the court to rule that the contract of July 10th 1843 did not bind them to make any offer to the plaintiffs after December 31st 1843; but the judge ruled that the defendants were bound to make such offer in 1857, that the agreement was valid, and was not satisfied by the deed of December 30, 1843, and that the deed to Heath was a breach of the contract which entitled the plaintiff to recover. The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

This case was argued in March 1863.

*C. M. Ellis*, for the defendants, cited *Livingston* v. *Stickles*, 8 Paige, 398; *Gleason* v. *Fayerweather*, 4 Gray, 348; 2 Cruise Dig. (Greenl. ed.) tit. XIII, c. 1, §§ 21–67.

*C. A. Welch*, (*G. Bemis* with him,) for the plaintiffs.

CHAPMAN, J.[*] This is an action to recover damages for the breach of a contract respecting the conveyance of certain real estate. The contract referred to is an indenture bearing date July 10, 1843. The defendants agree that upon the payment of the purchase money by the plaintiffs " on or before the first day of January next," they will duly execute and deliver to them a deed of certain lots on Eastern Avenue, with certain specified rights of way, drainage, &c.; and the plaintiffs agree that they will, " on or before the first day of January next," pay for the lots at two dollars per foot in cash, or notes payable in five years with semi-annual interest, and secured by mortgage. But it is also agreed that this sum is to be without interest till the first of January; and that in order to be entitled to give their notes for five years, they shall have erected such a number of substantial stone or brick buildings on the land as shall render a mortgage satisfactory to the company. This implies a right to occupy the premises.

The lots were marked and numbered on a plan which was recorded in the registry of deeds. After several other stipulations, not material in this case, follows the one upon which this action is brought: " And the Eastern Railroad Company further agree that before making a sale of either or any of the lots now reserved by the said company, and numbered twenty-eight, twenty-nine and thirty on the said plan, they will first offer the same, for the space of six days, to the said Russell and Standish, on the same terms with the land hereby contracted to be conveyed; but in case the said Russell and Standish shall not, within six days after being notified in writing, signify their intention to purchase the same, and shall not within one month complete said purchase, the

---

[*] BIGELOW, C. J. did not sit in this case.

said company shall have the right to sell the same to any other persons."

The defendants kept the property till November 29, 1852, when they made a lease of it for nine hundred and ninety-nine years to the East Boston Ferry Boat Company, and on the 8th of July 1857 they conveyed all their interest in it to Charles Heath. These conveyances, without first offering the premises to the plaintiffs, are the alleged breach of the agreement for which this action is brought.

The court are of opinion that neither of these conveyances constituted a breach of the agreement. It is true that the language of the clause last cited, viz, that before making a sale the defendants will first offer the same for the space of six days to the plaintiffs, is unlimited. But when it comes to speak of the terms of the sale, it is limited. It refers to the lots which the defendants had absolutely agreed to sell, and the plaintiffs had absolutely agreed to take. As to these lots, though the plaintiffs might enter and build on them at an earlier period, they were not to pay for them till January 1, 1844; and they were then to pay for them in cash, or if they should then have erected certain buildings on them, to give notes for the amount, payable in five years. Now it is obvious that after the first of January should have passed no further payment could be made on these terms and if we were to hold that the defendants, having kept their lots twenty-eight, twenty-nine and thirty for eight years or more, were still bound to make this offer to the plaintiffs, we should be compelled to create new terms of payment, and thus make a contract for the parties. Terms of payment might be dictated which should approximate to those agreed on; still they would be different. This leads us to the conclusion that the stipulation was not intended to be unlimited in time; but was a mere temporary arrangement. The defendants were laying out certain lots and streets in connection with their railroad and its terminus. They agreed to sell certain of these lots to the plaintiffs, and gave them the refusal of lots ten and eleven, if they should not want them for a hotel. This was a temporary right of preëmption. See *Russell* v. *Eastern Railroad,*

*ante*, 290. And they also gave a right of preëmption to the lots in question, if they should conclude to sell them. But the plaintiffs were under no obligation to buy; and it would be difficult to believe, without clear language to indicate it, that the defendants would have agreed to encumber the lots through all future time with a right of preëmption at two dollars per foot. This consideration tends to confirm our construction of the language of the contract, limiting its operation to the first of January 1844, after which the plaintiffs could not have taken the property and paid for it on the same terms with the other lots referred to. *Exceptions sustained.*